# WIND COLEBROOK SOUTH, LLC *v.*
## TOWN OF COLEBROOK
### (SC 20594)

Robinson, C. J., and D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 12-64 (a)), the following property, if not exempted, shall be taxed as real property: "Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, [and] all other buildings and structures . . . ."

Pursuant further to statute (§ 12-41 (c)), "[t]he annual declaration of the tangible personal property owned by such person on the assessment date, shall include, but is not limited to . . . [m]achinery used in mills

Wind Colebrook South, LLC *v.* Colebrook

and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies . . . .''

The plaintiff, which owns and operates a wind to electricity generation facility in the defendant town, appealed to the trial court from the decision of the town's board of assessment appeals. The board had denied the plaintiff's appeal from the town assessor's allegedly improper classification of its two wind turbines and the equipment associated with the turbines as real property pursuant to § 12-64 (a), rather than personal property pursuant to § 12-41 (c), and its appeal from the assessor's overvaluation and overassessment of the plaintiff's property. The turbines, which each consist of a tower, a hub, a nacelle, and a three blade rotor, are located on one parcel of land and controlled by a remote computer system, which, along with its associated equipment and software, is stored on an adjacent parcel of land. The tower of each turbine is more than 300 feet in height, contains a control panel and other equipment accessible through an exterior door at its base, and is bolted into a separate concrete foundation. The turbines were designed to remain in place for twenty years, after which the plaintiff agreed to decommission them. On its 2015 declaration of personal property, the plaintiff apparently included the value of the turbines and the associated equipment. The town assessor, however, determined that the turbines should be taxed as real property and that the costs incurred in the development of the facility containing the turbines should be considered in the valuation of the turbines for purposes of assessment and taxation. The town then hired a certified general real estate appraiser, whose appraisal the assessor used to determine the assessed value and fair market value for the parcel on which the turbines were situated. The assessor continued to use those values on the town's grand list in 2016, 2017, and 2018. On appeal to the trial court, the plaintiff claimed, inter alia, that the assessor had improperly classified the turbines as real property and had overvalued and overassessed its property. In support of the latter claim, the plaintiff introduced testimony from its own appraiser, D, who based his appraisal on the cost and income approaches, treated the wind turbines and associated equipment as personal property, and ultimately determined that the fair market value of the plaintiff's property was significantly less than the town's fair market valuation. The trial court rejected those claims, concluding, inter alia, that the assessor properly classified the wind turbines as real property under § 12-64 (a) because they were ''buildings'' or ''structures'' within the meaning of that statute and that the equipment associated with the turbines was also real property. The court also found that, given those conclusions, the plaintiff had failed to establish its allegations of overvaluation and overassessment because D's appraisal treated the wind turbines and associated equipment as personal property. From the judgment rendered thereon in favor of the town, the plaintiff appealed. *Held*:

Wind Colebrook South, LLC *v.* Colebrook

1. The trial court correctly concluded that the wind turbines were taxable as real property pursuant to § 12-64 (a) but incorrectly concluded that the equipment associated with the turbines also was taxable as real property instead of personal property under the "fixtures of . . . electric . . . companies" provision of § 12-41 (c): this court previously has construed and applied the word "building," as used in § 12-64 (a), to include edifices that are enclosed and suitable for occupancy or storage and that are virtually permanent, the trial court found that the interior of the base of each wind turbine was large enough to be occupied by several individuals at one time and that the turbines were virtually permanent, insofar as they were completely enclosed, designed to remain in place for twenty years, and would cost up to approximately $3 million to decommission, and, therefore, the trial court correctly determined that the turbines were taxable as buildings pursuant to § 12-64 (a); moreover, the wind turbines also constituted structures within the meaning of § 12-64 (a), as a review of the legislative history of the statute, including a recent amendment thereto, revealed that, when the legislature added the word "structures" to the "all other buildings and structures" catchall provision of § 12-64 (a), it intended the broad, commonly approved usage of the word, namely, "something . . . that is constructed," and applying the canon of ejusdem generis to limit "structures" narrowly to edifices, like those enumerated in the statute, that are enclosed and suitable for occupancy would render the addition of the word "structures" to that catchall provision superfluous; furthermore, although the wind turbines themselves could not be considered fixtures, insofar as they did not have the character of personal property, the turbines' associated equipment could be considered fixtures and, therefore, was taxable as personal property pursuant to the "fixtures of . . . electric . . . companies" provision of § 12-41 (c), and, because the trial court incorrectly determined that the equipment associated with the turbines was taxable as real property pursuant to § 12-64 (a) rather personal property taxable pursuant to § 12-41 (c), a remand to the trial court was necessary for, inter alia, a factual determination regarding the valuation of the equipment taxable under § 12-41 (c).

2. The trial court incorrectly concluded that the plaintiff had not established its allegations of overvaluation and overassessment, and, accordingly, the case was remanded for a determination regarding the amount of the reassessment that would be just: the trial court's rejection of D's appraisal, which treated the turbines and associated equipment as personal property, was premised on the conclusion that the turbines and associated equipment were taxable as real property, and, in light of this court's conclusion that the associated equipment must be treated as personal property pursuant to § 12-41 (c), the trial court's failure to consider D's appraisal lacked a legal basis and, thus, was clearly erroneous; moreover, because the record established that the valuation the trial court accepted classified the associated equipment as real property

Wind Colebrook South, LLC *v.* Colebrook

when it should have been classified separately as personal property, it could not be reasonably contended that the defendant did not overvalue the real property.

(*One justice concurring separately*)

Argued January 19—officially released August 2, 2022

*Procedural History*

Appeal from the decision of the defendant's board of assessment appeals concerning the tax assessment on certain of the plaintiff's property, brought to the Superior Court in the judicial district of Litchfield and tried to the court, *Shaban, J.*; judgment in part for the defendant, from which the plaintiff appealed. *Reversed in part*; *further proceedings.*

*Gregory F. Servodidio*, with whom was *Michael J. Marafito*, for the appellant (plaintiff).

*Patrick E. Power*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. The principal issue in this appeal is whether wind turbines used for the generation of electricity, and their associated equipment, are properly classified for purposes of taxation as real property pursuant to General Statutes § 12-64 (a)[1] or, instead, as personal property pursuant to General Statutes § 12-41

---

[1] General Statutes § 12-64 (a) provides in relevant part: "All the following mentioned property, not exempted, shall be set in the list of the town where it is situated and, except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors: Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings and structures . . . [and] all other lands and improvements thereon and thereto . . . ."

Wind Colebrook South, LLC *v.* Colebrook

(c).[2] The plaintiff, Wind Colebrook South, LLC, appeals[3] from the judgment of the trial court rendered primarily in favor of the defendant, the town of Colebrook, in this municipal property tax appeal brought pursuant to General Statutes §§ 12-117a[4] and 12-119.[5] On appeal, the

---

[2] General Statutes § 12-41 (c) provides in relevant part: "The annual declaration of the tangible personal property owned by such person on the assessment date, shall include, but is not limited to, the following property: Machinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies, leasehold improvements classified as other than real property and furniture and fixtures of stores, offices, hotels, restaurants, taverns, halls, factories and manufacturers. . . ."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 12-117a provides in relevant part: "Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994, or October 1, 1995, and with respect to the assessment list for assessment years thereafter, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any costs awarded by the court. . . ."

[5] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions

Wind Colebrook South, LLC *v.* Colebrook

plaintiff claims that the trial court improperly upheld the defendant's (1) classification of its two wind turbines and their associated equipment as real property pursuant to § 12-64 (a), (2) overvaluation and overassessment of its property, and (3) double assessment of the plaintiff's declared personal property. Although we conclude that the wind turbines were properly classified as real property, we agree with the plaintiff's claim that their associated equipment should have been classified as personal, rather than real, property. Accordingly, we reverse in part the judgment of the trial court.

The record reflects the following relevant facts, as found by the trial court, and procedural history. The plaintiff owns and operates a wind turbine facility on two parcels of land located at 17 and 29 Flagg Hill Road in Colebrook. The facility, the first and only full-scale wind-to-electricity generation facility in Connecticut, consists of two 2.85 megawatt wind turbines, both located at 29 Flagg Hill Road. The turbines are controlled by a remote computer known as the Supervisory Control and Data Acquisition System (computer system). The computer system and its accompanying equipment and software are all stored at 17 Flagg Hill Road. The turbines, which collectively weigh 418,657 pounds, each consist of a tower, a hub, a nacelle, and a rotor with three blades that have a 338 foot diameter. Each tower is approximately 328 feet in height and contains a control panel and other equipment accessible through an exterior door at its base. According to the

of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . . If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court.''

Wind Colebrook South, LLC *v.* Colebrook

defendant, each turbine, including the tower and blade, is a total of 492 feet high measuring from the top of a blade in its full upright position. Secured by 124 large anchor bolts, the turbines are mounted on separate concrete foundations, each of which is 58 feet in diameter and 9 feet deep. Construction of the turbines was completed in October, 2015, and the facility began commercial operation in November, 2015.

Both parties agreed that the turbines have "an approximate useful life of at least twenty years," after which the plaintiff has agreed to decommission them. Decommissioning the turbines is a complex process that will require unfastening the 124 anchor bolts that are cemented into the foundation and removing the turbines. The estimated cost of decommissioning the turbines is between $1,650,000 and $3,200,000. Although the trial court did not make a finding as to the effect on the land of decommissioning the turbines, the defendant argues that it will cause substantial damage to the land.

The defendant first taxed the plaintiff's turbines on its grand list of October 1, 2015. The defendant's assessor, Michele Sloane, determined that the turbines should be taxed as real property and that the costs incurred in the development of the facility should be considered in the valuation of the turbines for purposes of assessment and taxation. Subsequently, the plaintiff filed its 2015 declaration of personal property, which requires taxpayers to differentiate property by line item or code numbers. The plaintiff reported the value of its property under code 16—which includes furniture, fixtures, and equipment—to be $9,628,795, and the value of its property under code 20—which includes electronic data processing equipment—to be $367,000, with no supporting information or documentation to explain the derivation of each value. In light of the amount listed under code 16, Sloane determined that the plaintiff's proposed

Wind Colebrook South, LLC *v.* Colebrook

valuation of that property must have included the turbines, and, as a result, she did not accept the plaintiff's code 16 valuation. She did, however, accept the plaintiff's code 20 valuation. Additionally, because the plaintiff did not explain or substantiate the values reported on its 2015 declaration of personal property, the defendant hired Glenn C. Walker, a certified general real estate appraiser experienced in the appraisal of energy production facilities, to appraise the properties. Sloane relied on Walker's appraisal to conclude that the assessed value for 29 Flagg Hill Road was $9,274,640, with a fair market value of $13,300,100. Sloane continued to use these values on the grand list in 2016, 2017, and 2018.

In its 2017 personal property declaration, the plaintiff listed three new items as code 16 property for 2015 through 2017, again providing no information or explanation about the derivation of those values, according to Sloane. Paul J. Corey, one of the plaintiff's employees, testified that the additional items reported in 2017 were all associated with the turbines. However, Sloane was under the impression that the additional values were not associated with the turbines,[6] and, for the 2015 through 2017 personal property declarations, she continued to disregard the original amount reported by the plaintiff on its 2015 declaration of personal property. Sloane accepted the additional values as personal property, while also adding a 25 percent penalty for late reporting. Sloane used these valuations again in 2018 for that year's grand list.

The plaintiff challenged Sloane's assessment by appealing to the defendant's board of assessment appeals (board), claiming that Sloane improperly (1)

---

[6] Although the trial court credited Corey's testimony that the additional values were associated with the turbines, it also credited testimony from Sloane that she did not recall receiving any information or explanations from Corey regarding the additional values.

Wind Colebrook South, LLC *v.* Colebrook

overvalued and overassessed the property, (2) disregarded information regarding the wind turbines reported in the plaintiff's 2015 through 2018 declarations of personal property, (3) classified the wind turbines as real property, and (4) included items that were declared and assessed as personal property in her assessment of the real property, thus subjecting the plaintiff to double assessment and double taxation. The board denied the appeal. Subsequently, the plaintiff appealed from the decision of the board to the trial court pursuant to §§ 12-117a and 12-119.

In its tax appeal, the plaintiff renewed the claims it raised before the board. The plaintiff introduced testimony from an appraiser, P. Barton DeLacy, to challenge the defendant's $13,300,100 fair market valuation of the real property at 29 Flagg Hill Road, which included the turbines. DeLacy prepared a 2015 appraisal report using the cost[7] and income[8] approaches and treating the wind turbines and associated equipment as personal property. He ultimately determined that the fair market value of the plaintiff's properties as a whole, both real and personal property at 17 and 29 Flagg Hill Road, was $9,850,500.[9]

The trial court subsequently issued a memorandum of decision, first concluding that the defendant properly

---

[7] "Under the cost approach to valuation, the appraiser estimates the current cost of replacing the subject property, with adjustments for depreciation, the value of the underlying land, and entrepreneurial profit." *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 17 n.8, 807 A.2d 955 (2002).

[8] "[T]he income approach is used to value real estate through the capitalization of the property's earning power, such as the collection of rental income." (Internal quotation marks omitted.) *Redding Life Care*, *LLC* v. *Redding*, 308 Conn. 87, 97 n.10, 61 A.3d 461 (2013).

[9] Although DeLacy did not calculate the assessed value in his report, General Statutes § 12-62a (b) provides in relevant part that "[e]ach . . . municipality shall assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value . . . ." Accordingly, the assessed value under DeLacy's appraisal would be $6,895,350.

Wind Colebrook South, LLC *v.* Colebrook

classified the wind turbines as real property for purposes of taxation under § 12-64 (a) because they were "structures" or "buildings" within the contemplation of that statute. Although the trial court did not provide an additional analysis regarding the turbines' associated equipment, it further concluded that the associated equipment was also real property. Given these conclusions, the trial court further determined that the plaintiff failed to establish (1) its allegation of overvaluation and overassessment because the appraisal submitted by DeLacy treated the wind turbines and associated equipment as personal property, (2) that there was a double assessment and double taxation of the plaintiff's declared personal property, and (3) that the assessment of property was manifestly excessive, as Sloane properly used the methods of valuation outlined in General Statutes § 12-62 (b) (2).[10] The trial court did, however, conclude that the plaintiff established that the defendant's imposition of a 25 percent late filing penalty was improper. Accordingly, the trial court rendered judgment in favor of the plaintiff on the illegality of the penalty and in favor of the defendant in all other respects. This appeal followed.

On appeal, the plaintiff claims that the trial court incorrectly concluded that (1) the wind turbines and associated equipment are taxable as real property pursuant to § 12-64 (a), (2) the plaintiff failed to establish that the defendant's assessor overvalued and overassessed the property, and (3) the plaintiff failed to establish that there was a double assessment and, thus, double taxation

[10] General Statutes § 12-62 (b) (2) provides: "When conducting a revaluation, an assessor shall use generally accepted mass appraisal methods which may include, but need not be limited to, the market sales comparison approach to value, the cost approach to value and the income approach to value. Prior to the completion of each revaluation, the assessor shall conduct a field review. Except in a town that has a single assessor, the members of the board of assessors shall approve, by majority vote, all valuations established for a revaluation."

Wind Colebrook South, LLC *v.* Colebrook

of its declared personal property. We address each claim in turn.

I

We begin with the plaintiff's claim that the turbines are personal property rather than real property for purposes of taxation. In Connecticut, the taxation of real property is governed by § 12-64, whereas the taxation of personal property is governed by General Statutes § 12-71,[11] which provides that personal property must be listed subject to, among other statutes, § 12-41. See footnotes 1 and 2 of this opinion. The plaintiff argues that the turbines are "machines," which are personal property as defined by § 12-41 (c), insofar as they are comprised of the various components expressly identified in that statute, such as cables, wires, and poles. The plaintiff also argues that the turbines do not have any of the defining characteristics of the "structures" enumerated in § 12-64 (a), which would be characteristic of real property. In response, the defendant argues that the turbines are properly classified as real property pursuant to § 12-64 (a), given our interpretation of that statute in *Eastern Connecticut Cable Television, Inc.* v. *Montville*, 180 Conn. 409, 412, 414, 429 A.2d 905 (1980) (*Eastern Connecticut Cable*), which held a communications tower to be a structure, and *Stratford* v. *Jacobelli*, 317 Conn. 863, 877, 120 A.3d 500 (2015), which held portable aircraft hangars to be buildings or sheds. We agree with the defendant and conclude that the turbines are taxable as real property pursuant to § 12-64 (a).

Whether the trial court correctly concluded that the wind turbines and associated equipment were subject to taxation as real property pursuant to § 12-64 (a), rather

[11] General Statutes § 12-71 (a) provides in relevant part: "All goods, chattels and effects or any interest therein, including any interest in a leasehold improvement classified as other than real property, belonging to any person who is a resident in this state, shall be listed for purposes of property tax in the town where such person resides, subject to the provisions of sections 12-41, 12-43 and 12-59. . . ."

Wind Colebrook South, LLC *v.* Colebrook

than personal property under § 12-41 (c), is a question of statutory construction over which we exercise plenary review. See, e.g., id., 870–71. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, *including the question of whether the language actually does apply.*" (Emphasis added; internal quotation marks omitted.) *Dish Network, LLC* v. *Commissioner of Revenue Services*, 330 Conn. 280, 291, 193 A.3d 538 (2018). In seeking to determine that meaning, it is well established that we follow the plain meaning rule pursuant to General Statutes § 1-2z. See, e.g., *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, 340 Conn. 115, 126, 263 A.3d 87 (2021).

We begin with the text of § 12-64 (a). That statute provides for taxation of real property, including "[d]welling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings and structures . . . [and] all other lands and improvements thereon and thereto . . . ." General Statutes § 12-64 (a). In contrast, § 12-41 (c), on which the plaintiff relies, defines personal property to include "[m]achinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies . . . ." Although turbines are not expressly included in the language of § 12-64 (a), the defendant argues that the turbines are real property because they are structures, improvements, or buildings, as enumerated in that statute, or because they are fixtures annexed to and taxable as a part of any of the categories of real estate set forth therein.

In construing § 12-64 (a), "we do not write on a clean slate, but are bound by our previous judicial interpreta-

Wind Colebrook South, LLC *v.* Colebrook

tions of the language and the purpose of the statute.'' (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, supra, 317 Conn. 871. This court previously has defined ''building'' in this context as a ''constructed edifice *designed to stand more or less permanently*, covering a space of land, [usually] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.'' (Emphasis added; internal quotation marks omitted.) *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 412. In *Eastern Connecticut Cable*, this court was tasked with determining whether a communications tower, which was a 385 foot high assembly of twenty tubular steel sections that rested on a three feet by three feet concrete foundation embedded six feet into the ground, was a building pursuant to § 12-64 (a). Id., 410, 414–15. We recognized that, although a building is always a structure, not all structures are buildings, and concluded that, although the communications tower was a structure, it was not a building. Id., 414. Because the revision of § 12-64 in effect at that time did not provide for the taxation of structures but, instead, was limited to buildings,[12] this court concluded that the towers at issue in *Eastern Connecticut Cable* were not taxable as real property. Id. It was not until 1993, subsequent to *Eastern Connecticut Cable*, that the legislature added the term ''structures'' to § 12-64 (a). See Public Acts 1993, No. 93-64, § 1 (P.A. 93-64).

---

[12] The revision of the statute in effect when this court decided *Eastern Connecticut Cable* provided for the taxation of real property including ''[d]welling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, *all other buildings* . . . .'' (Emphasis added.) General Statutes (Rev. to 1985) § 12-64.

Wind Colebrook South, LLC *v.* Colebrook

Notwithstanding the amendment to § 12-64, the trial court in the present case concluded that the plaintiff's turbines were "buildings," as defined by this court in *Eastern Connecticut Cable* and as applied in *Jacobelli*. The plaintiff argues that the turbines in this case are distinguishable from the property as issue in *Jacobelli*, in which this court held that portable aircraft hangars are real property pursuant to § 12-64 (a) because, in that case, the parties stipulated that the hangars were used for storage. We disagree that *Jacobelli* is distinguishable in this regard. As we stated in *Jacobelli*, the controlling inquiry is not the actual use of the property but, rather, the use for which it is suitable.[13] See *Stratford* v. *Jacobelli*, supra, 317 Conn. 873–74. Unlike the tower in *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 414, which this court determined was unsuitable for occupancy, the trial court in the present case determined that the turbines were suitable for occupancy or storage. That conclusion was supported by the trial court's unchallenged factual findings that there was enough room in the interior of the base of each turbine for several individuals to be present at one time and that its design allowed it to be occupied much like a garage, shed, barn, or silo, which are buildings or structures expressly enumerated in § 12-64 (a).

Further, in comparison to the hangars determined to be buildings or sheds in *Jacobelli*, the turbines in the present case are also "virtually permanent . . . ." (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, 317 Conn. 877. As this court noted in *Jacobelli*, the definition of "buildings" imposes no strict permanency requirement, only that the structure is "more or less permanent . . . ."

---

[13] We emphasize this point, as the concurring opinion suggests that this inquiry should focus on the "true and essential function" of the property. Part II of the concurring opinion. We note that this suggestion is not in line with our current case law. See *Stratford* v. *Jacobelli*, supra, 317 Conn. 873–74. As we stated, the controlling inquiry is the use for which the property is suitable.

(Internal quotation marks omitted.) Id., 873. The hangars in *Jacobelli* were portable, temporary structures, and this court nevertheless held that the hangars were "virtually permanent as any other building might be . . . ." (Internal quotation marks omitted.) Id., 877. The trial court found that, like the hangars in *Jacobelli*, the turbines at issue in the present case were "more or less permanent. . . . [T]hey have interior space completely enclosed by walls, which makes them suitable for occupancy, and are used for the storage of equipment related to their operation. . . . The wind turbines also have roofs similar to that of a silo, [an] enumerated building, in that they are narrower than the base but complete the building by protecting the interior from external elements." Moreover, it is undisputed that the turbines are designed to remain in place for twenty years. Further, DeLacy testified that decommissioning the turbines at the end of their lifespan would cost up to $3,162,501. Thus, despite there being no strict permanency requirement in the classification of a building, the turbines are virtually permanent. Accordingly, we conclude that the trial court correctly determined that the turbines were taxable as buildings pursuant to § 12-64 (a).

In addition to arguing that the turbines are not buildings, the plaintiff argues that they are not structures and that the inclusion of the turbines within the "all other buildings and structures" catchall provision of § 12-64 (a) "requires a torturing and an expansion" of the statute. We disagree. The term "structure" is not defined in § 12-64 (a) or elsewhere in the tax chapter. "Generally, in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage." *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021). Contemporary to the 1993 amendment of § 12-64 (a), the word "structure" was defined as "something ([such] as a building) that is constructed . . . ." Merriam-Webster's Collegiate Dic-

Wind Colebrook South, LLC *v.* Colebrook

tionary (10th Ed. 1993) p. 1167; see also Webster's Third New International Dictionary (1986) p. 2267 (defining "structure" as "something made up of more or less independent elements or parts").

As required by § 1-2z, we must determine whether this statutory language is ambiguous. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 828, 251 A.3d 56 (2020). As opposed to the commonly approved usage of "structures," the plaintiff argues that the phrase "all other buildings and structures" must be construed in the context of the preceding structures enumerated and that, because all of those enumerated structures are enclosed and suitable for occupancy, any nonspecified item of property must share those characteristics in order to be taxable pursuant to § 12-64 (a). Consistent with the canon of ejusdem generis,[14] the plaintiff's interpretation of the language as included in the statute is reasonable. Thus, we are left with more than one reasonable interpretation of the statute and turn to extratextual sources to resolve this ambiguity.

We begin with the legislative history. As we noted previously, the legislature added the term "structures" to § 12-64 (a) in 1993. See P.A. 93-64, § 1. The debate during the proceedings in the House of Representatives on the bill enacted as P.A. 93-64 demonstrates that its purpose was to "simply clarify that *all* structures and improvements not exempted are subject to the property tax" and to reduce tax appeals involving structures that the legislature intended to be assessed as taxable entities, such as gaze-

---

[14] "[T]he rule of ejusdem generis . . . explains that [when] a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, supra, 317 Conn. 871–72.

bos and swimming pools. (Emphasis added.) 36 H.R. Proc., Pt. 7, 1993 Sess., pp. 2436–37, 2439–40, remarks of Representative Nancy Beals; see id., pp. 2440–41, remarks of Representative Robert M. Ward. Identifying a gazebo as a structure within the meaning of the statute, however, demonstrates that the legislature did not intend for structures to have to be buildings, as the enumerated structures are, to be taxable pursuant to § 12-64 (a). A conclusion that the only nonenumerated structures taxable pursuant to § 12-64 (a) are those that are enclosed and suitable for occupancy or storage—thereby rendering them "buildings" as defined by *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 412—would render the addition of the term "structures" in the 1993 amendment to the statute superfluous. See, e.g., *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 722, 780 A.2d 1 (2001) ("it should not be presumed that the legislature has enacted futile or meaningless legislation or that a change in a law was made without a reason" (internal quotation marks omitted)); see also *Arras* v. *Regional School District No. 14*, 319 Conn. 245, 260, 125 A.3d 172 (2015) ("[t]he legislature is presumed to be aware of the interpretation [that] the courts have placed [on] one of its legislative enactments" (internal quotation marks omitted)). Thus, applying the canon of ejusdem generis would be inconsistent with the legislative history. See *In re Elianah T.-T.*, 326 Conn. 614, 623, 165 A.3d 1236 (2017) (rule of ejusdem generis applies unless contrary intent appears); see also *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 811 n. 25, 873 A.2d 965 (2005) ("[although] canons certainly do have their place in the construction of statutes, it strikes us as unwise to elevate them over all other forms of 'extratextual evidence' because, for almost every maxim found in the 'grab bag' of canons, an equal and opposite proposition may be found"); 2A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction (7th Ed. 2007) § 47:22, pp. 392–94 ("[T]he general

Wind Colebrook South, LLC *v.* Colebrook

words are not restricted in meaning to objects of the
same kind . . . if there is a clear manifestation of a
contrary intent. . . . If, upon a consideration of the
context and the objects sought to be attained and of
the act as a whole, it adequately appears that the general
words were not used in the restricted sense suggested
by the rule, we must give effect to the conclusion
afforded by the wider view in order that the will of the
[l]egislature shall not fail.'' (Footnote omitted.)).

Further, the word "structure" is consistently defined
broadly in other sections of the General Statutes as
"any combination of materials that is affixed to the
land" or "any combination of materials, other than a
building, which is affixed to the land . . . ." See Gen-
eral Statutes § 7-147a (a) (historic districts);[15] General
Statutes § 7-147p (a) (historic properties);[16] General
Statutes § 8-13a (a) (1) (nonconforming land uses);[17]
General Statutes § 29-265 (c) (certificates of occu-
pancy).[18] Accordingly, we conclude that the legislature
intended not the narrow construction propounded by

[15] General Statutes § 7-147a (a) provides in relevant part: "As used in this
part . . . 'structure' means any combination of materials, other than a build-
ing, which is affixed to the land, and shall include, but not be limited to,
signs, fences and walls . . . ."

[16] General Statutes § 7-147p (a) provides in relevant part: "As used in this
part . . . 'structure' means any combination of materials, other than a build-
ing, which is affixed to the land, and shall include, but not be limited to,
signs, fences and walls . . . ."

[17] General Statutes § 8-13a (a) (1) provides in relevant part: "For purposes
of this section, 'structure' has the same meaning as in the zoning regulations
for the municipality in which the structure is located or, if undefined by
such regulations, 'structure' means any combination of materials, other than
a building, that is affixed to the land, including, without limitation, signs,
fences, walls, pools, patios, tennis courts and decks."

[18] General Statutes § 29-265 (c) provides in relevant part: "For the purposes
of this section, 'structure' has the same meaning as in the zoning regulations
for the municipality in which the building permit was issued, or if undefined
by such regulations, 'structure' means any combination of materials that is
affixed to the land, including, but not limited to, a shed, garage, sign, fence,
wall, pool, patio, tennis court or deck."

Wind Colebrook South, LLC *v.* Colebrook

the plaintiff but, rather, the commonly approved usage of "structure," which squarely encompasses the turbines at issue in the present case. This conclusion is also supported by references to both wind turbines and structures in other authorities. See, e.g., Regs., Conn. State Agencies § 16-50j-2a (36) (defining "[w]ind turbine tower" as "the base structure that supports a wind turbine rotor and nacelle"); see also *Daggett* v. *Feeney*, 397 P.3d 297, 306 (Alaska 2017) ("[a] wind turbine affixed to a [forty-nine foot] tower is clearly a fixed structure in the plain sense of the phrase, and towers have been recognized as 'structures' in other statutory contexts such as zoning codes").

The plaintiff maintains, however, that the turbines are not buildings or structures because they are "machines" taxable as personal property under § 12-41 (c). The defendant maintains that the turbines are properly classified as structures, improvements, or buildings and that, even if the turbines were classified as machinery, they would be machines pursuant to § 12-64 (a).[19]

At oral argument before this court, counsel for the plaintiff argued that "the tower simply assists in positioning the turbine in the right location in order to function properly." This factual representation is consistent with the trial court's finding that most of the equipment used to operate the turbines is contained

---

[19] Several arguments throughout the concurring opinion are premised on the parties' agreement that the turbines are machines. However, we note that the defendant frames its discussion conditionally. It states that, "even *if* the plaintiff's wind turbines or any individual components thereof are regarded as machinery, they are assessable under the provision of § 12-64 (a) that defines 'machinery' as real estate . . . ." (Emphasis added.) The defendant even went so far as to add a qualifying designation—"if machinery"—to one of the headings in its brief to this court to avoid conceding that the turbines were machinery. At oral argument before this court, the defendant's counsel argued that the turbines were "clearly structures" and that the turbines satisfied the definition of a building. However, at no point did the defendant's counsel argue that the turbines were machines.

Wind Colebrook South, LLC *v.* Colebrook

within the nacelle, which is a section of the turbine distinct from the tower. Thus, at the very least, the towers of the turbines are not "machines," as this court held the same to be true of the communications towers determined to be structures in *Eastern Connecticut Cable* when it stated that "[*t*]*he town's contention that the tower is taxable as machinery is similarly unavailing.* The tower is used simply as a support for the various antennas [that] receive and transmit broadcasting signals. The tower itself neither transmits nor changes the application of energy." (Emphasis added.) *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 414. Additionally, as the trial court pointed out, even if the turbines do have characteristics of machines, they do "not constitute 'machinery used in mills and factories,' " as set forth in § 12-41 (c).

The plaintiff also argues that the turbines must be classified as personal property because similarly situated property must be assessed equitably, and the only other commercial wind turbine in Connecticut, which is located in New Haven, is assessed as personal property.[20] This argument is unconvincing insofar as the

---

[20] At oral argument before this court, there was also discussion regarding a 1999 report from the Office of Legislative Research observing that most assessors in Connecticut treat cell towers as personal property, despite this court's determination in *Eastern Connecticut Cable* that the communications tower was a structure that would be taxable as real property after the 1993 revisions to § 12-64 (a). See Office of Legislative Research, OLR Research Report: Property Taxation of Telecommunications Facilities (January 28, 1999) available at https://www.cga.ct.gov/PS99/rpt/olr/htm/99-R-0131.htm (last visited July 27, 2022). This report does not, however, support the plaintiff's argument in this appeal because it acknowledged that, under the post-1993 version of § 12-64 (a), under which "structures are considered real property . . . the common practice is *inconsistent with the law* with regard to towers, *which are structures.*" (Emphasis added.) Id. A subsequent report stated that "[i]t appears that treating towers as real property is consistent with the law. [Section 12-64 (a)], which defines real property for tax purposes, includes all structures, although it does not specifically mention towers. Similarly . . . § 16-50j-2a [(30) of the Regulations of Connecticut State Agencies] defines a tower as a structure for purposes of establishing the Connecticut Siting Council's jurisdiction." Office of Legislative Research, OLR Research Report: Property Tax Treatment of Cell Towers (January

Wind Colebrook South, LLC *v.* Colebrook

statute the plaintiff cites in support of this argument, General Statutes § 12-55 (b),[21] requires only that "assessors . . . equalize the assessments of property *in the town* . . . ."[22] (Emphasis added.) This argument is equally unconvincing in regard to the hydroelectricity generating turbine located in Colebrook because, as the trial court found as a factual matter, the hydro turbine "was not at all similar to the wind turbines," and its "significant differences from the wind turbines do not warrant similar treatment." Crediting Sloane's testimony, the trial court found that the hydro turbine located in Colebrook was, unlike the wind turbines, moveable and removed when not in use.

In the alternative, the plaintiff argues that, as fixtures of a company engaged in the production of electrical

12, 2001) available at https://www.cga.ct.gov/2001/rpt/2001-R-0071.htm (last visited July 27, 2022); see also *Snake Meadow Club*, *Inc.* v. *Killingly*, Superior Court, judicial district of Windham, Docket No. CV-07-4006068-S (July 24, 2008) (45 Conn. L. Rptr. 827, 829) (following § 12-64 (a) in dismissing tax appeal claiming cell tower was improperly taxed as real property).

[21] General Statutes § 12-55 (b) provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. The assessor or board of assessors may increase or decrease the valuation of any property as reflected in the last-preceding grand list, or the valuation as stated in any personal property declaration or report received pursuant to this chapter. . . ."

[22] The plaintiff also references a wind turbine and associated tax appeal in which the Intermediate Court of Appeals of Hawaii concluded that the wind turbines at issue were not taxable as real property pursuant to the Maui County Code. See *In re Tax Appeal of Kaheawa Wind Power*, *LLC* v. *Maui*, 135 Haw. 202, 211, 347 P.3d 632 (App. 2014), cert. rejected, Hawaii Supreme Court, Docket No. SCWC-12-0000728 (February 19, 2015). The Hawaii case is distinguishable because the parties in that case agreed that the wind turbines at issue were "machinery" as a matter of law; id., 208; and because the relevant provision of the tax code provided only for the taxation of machinery "[the] use [of which] is necessary to the utility of such land . . . ." (Internal quotation marks omitted.) Id., 207. The court determined that those wind turbines were not necessary or useful to the land for "whatever business may be carried on upon it" and, accordingly, concluded that those wind turbines were not taxable as real property under the language of the governing provision. (Internal quotation marks omitted.) Id., 211. In contrast, § 12-64 (a) contains no such limiting language, and, thus, the Hawaii case does not support the plaintiff's claim.

energy,[23] the turbines are personal property pursuant
to § 12-41 (c). See footnote 2 of this opinion. Specifi-
cally, the plaintiff argues that, even if the turbines are
structures, as contemplated by § 12-64 (a), they are also
fixtures of an electric company pursuant to § 12-41 (c),
and that, as the statute more specifically on point, well
established principles of statutory construction require
this court to apply § 12-41 (c). See, e.g., *Housatonic
Railroad Co.* v. *Commissioner of Revenue Services*,
301 Conn. 268, 302, 21 A.3d 759 (2011) ("[I]t is a [well
settled] principle of construction that specific terms
covering the given subject matter will prevail over gen-
eral language of the same or another statute [that] might
otherwise prove controlling. . . . The provisions of
one statute [that] specifically focus on a particular prob-
lem will always, in the absence of express contrary
legislative intent, be held to prevail over provisions
of a different statute more general in its coverage."
(Internal quotation marks omitted.)). We agree with the
plaintiff with respect to the associated equipment. We
disagree, however, with respect to the turbines them-
selves and conclude that the fixture analysis proposed
by the plaintiff is factually inapplicable to the turbines.

A fixture is "a piece of personal property [that] has
become so connected to realty . . . as to have lost
its character as personalty . . . ." *ATC Partnership* v.
*Windham*, 268 Conn. 463, 480, 845 A.2d 389 (2004); see
*Capen* v. *Peckham*, 35 Conn. 88, 93 (1868) ("Property
is divided into two great divisions, things personal and
things real, and fixtures may be found along the dividing
line. They are composed of articles that were once
chattels, or such in their nature, and by physical annex-
ation to real property have become accessory to it and
parcel of it."). Examples of property held to be fixtures

---

[23] As the trial court stated, "[n]either party disputes that the plaintiff is a
company engaged in the production of electrical energy."

Wind Colebrook South, LLC *v.* Colebrook

pursuant to Connecticut common law include articles such as machinery in a textile mill; see *ATC Partnership* v. *Windham*, supra, 481; burial crypts; see *Norwalk Vault Co. of Bridgeport, Inc.* v. *Mountain Grove Cemetery Assn.*, 180 Conn. 680, 690, 433 A.2d 979 (1980); and a bell located in the bell tower of a factory. See *Alvord Carriage Mfg. Co.* v. *Gleason*, 36 Conn. 86, 87–88 (1869). Unlike these articles, the turbines cannot be found along the dividing line between personal and real property, as they have no character of personalty.[24] The turbines, as constructed, were not once chattels that only became real property through physical annexation to the land and, thus, cannot be considered a fixture.[25] To the extent that the plaintiff believes that the wind turbines should be classified as personal property

---

[24] This court has also declined to apply a fixture analysis in the context of § 7-147a (a), which defines a "structure" as "any combination of materials, other than a building, *which is affixed to the land*, and shall include, but not be limited to, signs, fences and walls . . . ." (Emphasis added; internal quotation marks omitted.) *Historic District Commission* v. *Hall*, 282 Conn. 672, 678, 681, 923 A.2d 726 (2007). We stated that, "although the term 'affix' is derived from the law of fixtures, a determination that an object is 'affixed to the land' under *this* statute does not require consideration of permanency and intent." (Emphasis in original.) Id., 681.

[25] The concurring opinion asserts that "[t]he wind turbine plainly was not realty before being attached to the land . . . ." Part I of the concurring opinion. Perhaps this is true of machinery, but, as determined, at the very least, the towers of the turbines are not machinery. Because the turbines satisfy this court's definition of a "building," claiming the turbines were not realty before being attached to the land is like saying that a house transported to a plot of land was not realty before being affixed to that land. Although there are venerable decisions from this court referring to buildings as "fixtures," the historical usage of the term cannot be understood in context to reference the well established prevailing principles of our fixture jurisprudence with respect to personal property. See, e.g., *Van Auken* v. *Tyrrell*, 130 Conn. 289, 293, 33 A.2d 339 (1943) ("[w]hen the house was built [on] the lot some three years later, it became a fixture, and as such a part of the realty, and title to it merged in the land"); *Landon* v. *Platt*, 34 Conn. 517, 524–25 (1868) (treating buildings as permanent fixtures annexed to soil); see also *ATC Partnership* v. *Windham*, supra, 268 Conn. 480 (standard by which this court determines "whether a piece of personal property has become so connected to realty so as to have lost its character as personalty and become a fixture" has been "reaffirmed consistently").

regardless, its recourse lies with the legislature. See, e.g., *Commission on Human Rights & Opportunities* v. *Edge Fitness*, *LLC*, 342 Conn. 25, 43, 268 A.3d 630 (2022) (recognizing "the legislature . . . [as] the policy-making branch of our government").

Although the turbines cannot properly be considered fixtures of an electric company, the associated equipment can be. As the trial court noted, § 16-50j-2a of the Regulations of Connecticut State Agencies defines the term "associated equipment" to include "any . . . fuel tank, backup generator, transformer, circuit breaker, disconnect switch, control house, cooling tower, pole, line, cable, conductor or emissions equipment . . . ." Regs., Conn. State Agencies § 16-50j-2a (1) (B). As we stated, § 12-41 (c) specifically enumerates "cables, wires, poles, underground mains, conduits, [and] pipes" as tangible personal property. However, the statute also includes "other fixtures of . . . electric . . . companies"; General Statutes § 12-41 (c); and, thus, would encompass all associated equipment considered to be fixtures of the turbines. According to our common-law principles, if articles "are fixtures, the personalty becomes part of the property and they are [taxable as] realty." (Internal quotation marks omitted.) *Vallerie* v. *Stonington*, 253 Conn. 371, 372, 751 A.2d 829 (2000). However, in light of the specific language in § 12-41 (c) identifying cables, wires, poles, underground mains, conduits, pipes and other fixtures of electric companies as tangible personal property, we agree with the plaintiff that well established principles of statutory construction compel us to conclude that the associated equipment is personal property pursuant to § 12-41 (c).[26]

---

[26] Because cables, wires, poles, underground mains, conduits, and pipes are enumerated in § 12-41 (c), any of these articles affixed to the plaintiff's wind turbines are, without question, personal property. However, a determination of which other equipment associated with the turbines must be considered personal property is dependent on what properly can be considered a fixture as required by the statute. "The question as to whether a particular piece of property is personalty or a fixture is a question of fact."

Wind Colebrook South, LLC *v.* Colebrook

See *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, supra, 301 Conn. 302. Accordingly, we conclude that the trial court correctly determined that the turbines are taxable as real property pursuant to § 12-64 (a). We also conclude, however, that the trial court incorrectly determined that the equipment associated with the turbines is taxable as real property pursuant to § 12-64 (a). Because the associated equipment is personal property taxable pursuant to § 12-41 (c), remand to the trial court is necessary for the factual determination of the valuation of the items taxable under that statute.

II

We next address the plaintiff's claim that the trial court incorrectly concluded that the plaintiff had not established its allegations of overvaluation and overassessment. The plaintiff argues that the trial court improperly failed to consider or to evaluate the merits of DeLacy's appraisal. In response, the defendant argues that the trial court did not reject the method of appraisal used by DeLacy but, rather, concluded that the appraisal was inadequate because it did not include an appraisal of the real property at 29 Flagg Hill Road. We conclude that we must remand the plaintiff's claim of overvaluation and overassessment for a determination of the amount of the reassessment in accordance with § 12-117a.

By way of background**,** "[§] 12-117a . . . provide[s] a method by which an owner of property may directly call in[to] question the valuation placed by assessors [on] his property . . . . In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first instance, is [on] the plaintiff to show that he has,

*ATC Partnership* v. *Windham*, supra, 268 Conn. 479. As such, identification of the associated equipment and the fixtures among it must be determined on remand.

Wind Colebrook South, LLC *v.* Colebrook

in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a] . . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at [its] own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and [its] own general knowledge of the elements going to establish value including [its] own view of the property.'' (Internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, 308 Conn. 87, 99–100, 61 A.3d 461 (2013). ''Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of [assessment appeals] to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains . . . . If a taxpayer is found to be aggrieved by the decision of the board of [assessment appeals], the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property.'' (Internal quotation marks omitted.) *Breezy Knoll Assn.*, *Inc.* v. *Morris*, 286 Conn. 766, 776, 946 A.2d 215 (2008).

In the present case, the trial court determined that the appraisal conducted by DeLacy for the plaintiff was insufficient to establish that the plaintiff was entitled to relief under § 12-117a because it was inconsistent with the trial court's conclusion that the turbines and associated equipment are taxable as real property. Because we conclude in part I of this opinion that the associated equipment must be treated as personal property pursuant to § 12-41 (c), the trial court's rejection of DeLacy's appraisal lacks a legal basis, rendering it

Wind Colebrook South, LLC *v.* Colebrook

clearly erroneous by definition. See *Redding Life Care, LLC* v. *Redding*, supra, 308 Conn. 100–101 ("[T]he question of overvaluation usually is a factual one subject to the clearly erroneous standard of review . . . . Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citation omitted; internal quotation marks omitted.)). Put differently, the record establishes that the valuation accepted by the trial court included the associated equipment as real property, when it should have been classified separately as personal property. Thus, it cannot be reasonably contended that the defendant did not overvalue the real property, and, accordingly, we conclude that, as a matter of law, the plaintiff has satisfied its burden of proving that its property has been overvalued. See, e.g., *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 266–67, 994 A.2d 174 (2010) (establishing that reviewing court need not remand for factual determination when unchallenged evidence vitiates need to do so). Although we need not remand to determine whether the property was overvalued, we conclude that remand to the trial court is required to determine the amount of the reassessment that would be just pursuant to § 12-117a.[27] See footnote 4 of this

[27] The plaintiff also brought this property tax appeal pursuant to § 12-119. See footnote 5 of this opinion. "Claims that an assessor has misclassified property and, consequently, overvalued it, comprise a category of appeals frequently pursued under the aegis of § 12-119." *Griswold Airport, Inc.* v. *Madison*, 289 Conn. 723, 740, 961 A.2d 338 (2008). "In such cases, the determinative issue typically is whether, as a matter of law, the property at issue properly was subject to taxation as the type of property falling within the classification applied by the assessor. . . . If the plaintiff can show that it was not, it necessarily follows that the resulting assessment was manifestly excessive." (Citation omitted.) Id., 741. Because we conclude that the equipment associated with the turbines improperly was classified as real property, it necessarily follows that the defendant's assessment was

Wind Colebrook South, LLC *v.* Colebrook

opinion; see also *Ireland* v. *Wethersfield*, 242 Conn. 550, 558, 698 A.2d 888 (1997) ("[i]f . . . the trial court finds that the taxpayer, in light of the persuasiveness, for example, of his appraiser, has demonstrated an overvaluation of his property, the trial court must then undertake a further inquiry to determine the amount of the reassessment that would be just").

Additionally, because the trial court must determine the amount of reassessment on remand given the classification of the associated equipment as personal property, the plaintiff's final claim that the defendant improperly double assessed and double taxed certain equipment associated with the turbines is unlikely to arise on remand,[28] and we need not address the claim.

The judgment is reversed as to the classification of the associated equipment and the case is remanded for further proceedings according to law on the overvalu-

manifestly excessive. However, this court has recently stated that, although "an insufficiency of data or the selection of an inappropriate method of appraisal could serve as the basis for not crediting the appraisal report that resulted, it could not, *absent evidence of misfeasance or malfeasance*, serve as the basis for an application for relief from a wrongful assessment under § 12-119. . . . In short, when reviewing a claim raised under § 12-119, a court must determine whether the plaintiff has proven that the assessment was the result of illegal conduct. . . . Put differently, tax relief under § 12-119 is available only in an extraordinary situation." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Tuohy* v. *Groton*, 331 Conn. 745, 760, 207 A.3d 1031 (2019). Accordingly, we conclude that the plaintiff is entitled to relief only pursuant to § 12-117a.

[28] Specifically, the plaintiff claims that the computer system at 17 Flagg Hill Road was included in its 2015 through 2018 declarations of code 20 personal property, which was accepted by the defendant's assessor, *and* in the assessor's valuation of real property associated with 29 Flagg Hill Road, resulting in a double assessment. The plaintiff also claims that, when the assessor accepted its amended 2016 declaration of code 20 personal property costs associated with the completion of the turbines while classifying the turbines as real property, she caused another double assessment. Because we conclude that, on remand, the associated equipment must be considered as personal property pursuant to § 12-41 (c), the issue of specific equipment being taxed as both real and personal property is unlikely to arise.

Wind Colebrook South, LLC *v.* Colebrook

ation and overassessment claims; the judgment is affirmed in all other respects.

In this opinion D'AURIA, MULLINS and KAHN, Js., concurred.

ECKER, J., concurring. I agree that a wind turbine is properly classified as real property for taxation purposes under General Statutes § 12-64 (a), and I therefore join the result reached by the majority. But I would reach that outcome by way of a different analysis. The plaintiff, Wind Colebrook South, LLC, concedes—indeed, it insists—that the wind turbines at issue are machines. In my view, that concession is dispositive because "machinery" is taxed as realty under the express terms of § 12-64 (a) unless it falls within the narrow exception carved out by General Statutes § 12-41 (c), which provides in relevant part that "[m]achinery used in mills and factories" is taxed as personalty. Wind turbines do not fit within this exception and, therefore, are classified as real property under the statutory scheme. This result is compelled by the language of the relevant statutes construed, in accordance with the applicable canons of construction. It has the virtue of avoiding a number of concerns raised by the alternative construction contained in the majority opinion.

As a preliminary point, I observe that, although I ultimately consider the outcome of the statutory analysis to be an easy call in this particular case, the relevant statutes made the task of interpretation far more difficult than necessary. Their text consists of what appears to be a randomly arranged series of specifically enumerated items deemed to be either real or personal property, conjoined with one or more broad, open-ended phrases, all without any apparent internal cohesion or structure. Sections 12-64 (a) and 12-41 (c) contain no definitions of their key terms: real property, personal

Wind Colebrook South, LLC *v.* Colebrook

property, buildings, structures, improvements, fixtures or machinery. Worse, neither statute contains any discernable standards that would enable tax assessors, taxpayers, or courts to classify property as personalty or realty. The statutes give every appearance of having been stitched together over hundreds of years by a committee of strangers. It may well be that there is an explanation for this apparent lack of legislative upkeep and maintenance; the legislature well knows how to give careful attention to such matters when it considers the task worthwhile.[1] Perhaps there is no felt need to update these particular statutes because they serve their function as written; taxation, after all, is a specialized and esoteric field, and the proper application of these statutes in all but the most unusual case may be obvious to experts and tax professionals privy to whatever unwritten conventions have emerged over

---

[1] For example, it is clear that the legislature attends frequently to the subject of *exemptions* from property taxation for any particular class of property. See, e.g., General Statutes § 12-81 (1) (exempting United States property); General Statutes § 12-81 (12) (exempting personal property of religious organizations devoted to religious or charitable use); General Statutes § 12-81 (18) and (19) (exempting property of veterans' organizations and veterans); General Statutes § 12-81 (31) through (35) (exempting personal property, such as household furniture, private libraries, musical instruments and electronics, watches and jewelry, and wearing apparel); General Statutes § 12-81 (57) (exempting certain types of renewable energy sources); General Statutes § 12-81 (72) (exempting machinery and equipment in manufacturing facilities). These statutes, and the frequency with which they are amended, demonstrate that the legislature is regularly engaged in the task of setting public policy with regard to property taxation generally. I acknowledge the possibility that the legislature has deliberately chosen not to revise and modernize §§ 12-64 (a) and 12-41 (c) because it has determined that the distinction between realty and personalty is relatively unimportant; perhaps what matters most is property tax exemptions, not the classification of taxable property as either realty or personalty. During oral argument in the present case, the plaintiff's counsel stated that the significance of the classification arises because different rules governing depreciation apply depending on whether the subject property is classified as real property or personal property. Compare General Statutes § 12-63 (b) (6) (permitting annual depreciation for personal property), with General Statutes § 12-62 (b) (1) (permitting depreciation of real property only once every five years).

time to guide the cognoscenti. In any event, this court has no choice but to decide the present case as presented, under the statutes as written.

I

The plaintiff's wind turbines[2] are taxable either as real property pursuant to § 12-64 (a) or as personal property pursuant to § 12-41 (c). It is one or the other; no claim of exemption has been raised by the taxpayer. Reciting the relevant provisions goes a long way toward illustrating why the classification scheme can lead to interpretive difficulties with respect to property that is not expressly enumerated. Section 12-64 (a) provides in relevant part: "All the following mentioned property, not exempted, shall be [taxed as real property]: Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings and structures, house lots, all other building lots and improvements thereon and thereto, including improvements that are partially completed or under construction, agricultural lands, shellfish lands, all other lands and improvements thereon and thereto, quarries, mines, ore beds, fisheries, property in fish pounds, machinery and easements to use air space whether or not contiguous to the surface of the ground. . . ."

Section 12-41 (c) provides in relevant part: "The annual declaration of the tangible personal property owned by such person on the assessment date, shall include, but is not limited to, the following property: Machinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other

---

[2] By "wind turbine," I refer to the entire assembly, including the tower, hub, nacelle, and rotor. The associated equipment that is used to operate the turbines includes wires, conduits, electrical equipment, transformers, and cabling.

fixtures of water, gas, electric and heating companies, leasehold improvements classified as other than real property and furniture and fixtures of stores, offices, hotels, restaurants, taverns, halls, factories and manufacturers. . . .''

I believe that the present case is an easy one under the express terms of these statutes. More particularly, I agree with the defendant that a wind turbine is properly classified as real property because it is machinery that is not located in a mill or factory.[3] ''Machinery'' is included as the penultimate category of real property enumerated in § 12-64 (a), listed between ''property in fish pounds'' and ''easements to use air space whether or not contiguous to the surface of the ground.'' A wind turbine plainly does not fall within the single exception to this categorization, the provision in § 12-41 (c) deeming ''[m]achinery used in mills and factories'' to be personal property. The plaintiff's wind turbines are not

---

[3] The majority suggests that the defendant makes efforts in its brief ''to avoid conceding that the turbines were machinery.'' Footnote 19 of the majority opinion. I do not interpret its brief in the same manner—nor do I understand why the defendant would want to avoid ''conceding'' an argument that conclusively clinches its case that the wind turbines must be classified as real property. The relevant argument heading in the defendant's brief asserts in relevant part that ''the trial court correctly [concluded] that the wind turbines are structures, improvements, buildings, machinery affixed to the land (if machinery) . . . taxable as real estate under § 12-64 (a).'' The argument then proceeds to explain, seriatim, why the turbines are properly considered structures, improvements, buildings, and machinery. The paragraph considering the turbines as machinery provides in relevant part that, ''even if the plaintiff's wind turbines or any individual components thereof are regarded as machinery, they are assessable under the provision of § 12-64 (a) that defines 'machinery' as real estate because they are attached directly to land by means of the foundations and towers, the other components of the turbines are attached to the towers, and all of the components are essential to the operation of the turbines as an integrated whole.'' The conditional phraseology, in my view, is not intended to eschew the characterization of the turbines as machinery but to indicate that the plaintiff cannot prevail *even on its own terms*, i.e., even if the plaintiff is correct that its wind turbines are treated as machinery. In any event, it does not matter whether the defendant embraces or resists this characterization; if the *plaintiff* deems the turbines to be machinery for purposes of property taxation,

Wind Colebrook South, LLC *v.* Colebrook

located "in" any building, and certainly not in a mill or a factory. In my view, the analysis ends there.[4] The

it cannot complain about the consequences of that characterization under the statutory scheme.

[4] It is hardly intuitive or obvious that machinery is real property for property tax purposes, and I make no effort to explain the result by reference to general principles of property law. Many states treat portable or movable machinery as personal property for tax purposes, unless it is a fixture. See 84 C.J.S. Taxation § 99 (2022); 35A Am. Jur. 2d 707–708, Fixtures § 1 (2021). Commentators do the same. See, e.g., 16 E. McQuillin, The Law of Municipal Corporations (3d Ed. Rev. 2003) § 44.45, pp. 202–205. Connecticut, however, evidently has historically taxed business owned machinery as part of the realty. See *Sprague* v. *Lisbon*, 30 Conn. 18, 19–20 (1861) (under then existing statutes, machinery contained in mill is taxable as part of mill regardless of machinery's prior classification as personal property); *Stamford Gas & Electric Co.* v. *Stamford*, 6 Conn. Supp. 505, 513–15 (1938) (providing overview of relevant tax legislation between 1796 and mid-nineteenth century and explaining that, in Connecticut, as of 1938, "machinery permanently affixed to land is to be assessed with such land, if devoted to manufacturing uses and with the buildings where it is incorporated therein . . . [and] the building is employed for manufacturing purposes and so, in either case, as realty"); see also *Reconstruction Finance Corp.* v. *Naugatuck*, 136 Conn. 29, 30, 68 A.2d 161 (1949) ("[t]he machinery, being attached to the real estate, would . . . have been subject to taxation in Connecticut to the same extent as real property"). There are numerous cases suggesting that machinery has sometimes been treated as personal property, but those cases appear to involve specific exemptions applicable to machinery and equipment used in manufacturing facilities. See, e.g., *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 233–34, 842 A.2d 1089 (2004) (upholding denial of personal property tax exemption for machinery and equipment on ground that taxpayer was related to or affiliated with seller); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 762, 601 A.2d 1005 (1992) ("the 'manufacturing industries' exempted from taxes on the purchase of machinery and equipment and services rendered thereto were 'intended to be such as might go elsewhere' "); *Phelps Dodge Copper Products Co.* v. *Groppo*, 204 Conn. 122, 135, 527 A.2d 672 (1987) (observing that "one of the purposes behind the exemption [of certain machinery used in manufacturing] is to stimulate manufacturing industries in Connecticut"). This court has held that the generation of electricity does not constitute "manufacturing" in the cognate exemption for sales and use taxes; see *United Illuminating Co.* v. *Groppo*, supra, 755; and, thus, the wind turbines in the present case evidently would not qualify under the existing exemptions for machinery used in designated manufacturing operations. See General Statutes § 12-81 (60), (70), (72), (76) and (78). Presumably, this explains why the plaintiff has not claimed the benefit of any such exemption.

I note that there are two nineteenth century cases that do not appear to fit into the framework that I have described in this footnote regarding the generic treatment of machinery as real property under Connecticut law. See *Gaylor* v. *Harding*, 37 Conn. 508, 517–18 (1871) (referring to moveable machinery as personal property); *Swift* v. *Thompson*, 9 Conn. 63, 67 (1831)

Wind Colebrook South, LLC *v.* Colebrook

plaintiff agrees that its wind turbines are machinery. Indeed, it repeatedly insists that a wind turbine "squarely meet[s] the definition of a machine" in support of its argument that wind turbines should be classified as personal property under § 12-41 (c) and should not be treated as a "building" or a "structure" under § 12-64 (a).[5] Focusing specifically on the language in § 12-41 (c) providing that "cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies" are personal property, the plaintiff contends that the wind turbines "unequivocally fall within this statute as they are machinery of an electric company and are primarily comprised of the articles specifically enumerated in . . . § 12-41 (c)." This argument is flawed for the following reasons.[6]

First, the "fixtures" provision on which the plaintiff relies does not mention the words machine or machinery; it does not appear to refer to machines at all. Cables, wires, poles, underground mains, conduits, and pipes are not machines; they are equipment used for the transmission or transportation of water, gas, electricity, and heat. Of course, machines may *include* cables, wires, pipes, and the like as component parts—the plaintiff contends that its wind turbines contain some of those components—but the enumerated items themselves are not machines or machinery, as those words are commonly and ordinarily used. Wind turbines, by contrast, are machines. As the plaintiff itself describes them in its brief, wind turbines are machines that generate

_____

(describing machine in cotton mill as personal property). I leave it to more ambitious students of the historical treatment of fixtures in Connecticut law to resolve the apparent tension. The fact remains that the relevant statutes, as currently written, treat machinery (other than machinery used in mills or factories) as realty.

[5] The defendant agrees that the wind turbines are machinery but contends that, as such, it is real property under the plain language of § 12-64 (a).

[6] There is no dispute between the parties that the plaintiff is an electric company within the meaning of that term, as used in § 12-41 (c).

Wind Colebrook South, LLC *v.* Colebrook

power.[7] It is clear that the legislature used the word "machinery" in these statutes when it meant to do so, not only in § 12-64 (a), discussed previously, but also in § 12-41 (c), where the text refers to "[m]achinery used in mills or factories," the category immediately preceding the phrase now under consideration. Particularly in light of the proximity of this explicit reference to machinery used in mills or factories, it is not plausible that the phrase relating to transmission equipment was intended to include machinery such as the wind turbines in the present case.

We should also consider, as the majority does, whether a wind turbine, although not among the enumerated items in the provision at issue in § 12-41 (c), nonetheless falls within the intended scope of the phrase "and other fixtures" accompanying the specific enumeration under review. The canon of construction known as ejusdem generis ("of the same kind") is useful in this context because it teaches that, when " a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration, unless there is something to show a contrary intent." *Easterbrook* v. *Hebrew Ladies Orphan Society*, 85 Conn. 289, 296, 82 A. 561 (1912); accord *Eastern Connecticut Cable Television, Inc.* v. *Montville*, 180 Conn. 409, 413, 429 A.2d 905 (1980) (*Eastern Connecticut Cable*);[8] see also *24 Leggett Street Ltd. Partnership* v.

---

[7] The plaintiff refers in its brief to the wind turbine as a machine that "transform[s] wind energy into electricity."

[8] Not incidentally, *Eastern Connecticut Cable* applied this rule of construction as an aid to interpret a prior version of the very statute at issue in the present case, namely, § 12-64 (a). See *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 413 (holding that "the general term 'all other buildings' [in the statute] must be construed in light of the immediately preceding enumeration of buildings which includes dwelling houses, garages, barns, sheds, stores, shops, mills, ice houses, warehouses, and silos"). Section 12-64 (a) was amended in 1993 to include "all other buildings and structures," which is the phrase that is the subject of the present dispute.

*Beacon Industries, Inc.*, 239 Conn. 284, 297, 685 A.2d 305 (1996).[9] The phrase "and other fixtures," as used in § 12-41 (c), must be understood by the company it keeps.[10]

The category created by the enumerated items appears to be equipment for the transmission or transportation of water, gas, electric, and heating companies. Historically, the phrase appears to originate as a common reference in statutes and cases determining the rights of telegraph, telephone, electric, and other utility companies to install transmission equipment—poles, cables, wires, conduits "and other fixtures"—on, over, or under land owned by others. See, e.g., *Connecticut Light & Power Co.* v. *Costello*, 161 Conn. 430, 434, 288 A.2d 415 (1971) (condemnation proceeding involving

Public Acts 1993, No. 93-64, § 1. The effect of the 1993 amendment is discussed subsequently in this opinion.

[9] Our decision in *24 Leggett Street Ltd. Partnership* explains the parameters of the rule: "The principle of ejusdem generis applies when '(1) the [clause] contains an enumeration by specific words; (2) the members of the enumeration suggest a specific class; (3) the class is not exhausted by the enumeration; (4) a general reference [supplements] the enumeration . . . and (5) there is [no] clearly manifested intent that the general term be given a broader meaning than the doctrine requires.' 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 47.18 [p. 200]. Thus, '[t]he doctrine of ejusdem generis calls for more than . . . an abstract exercise in semantics and formal logic. It rests on particular insights about everyday language usage. When people list a number of particulars and add a general reference like "and so forth" they mean to include by use of the general reference not everything else but only others of like kind. The problem is to determine what unmentioned particulars are sufficiently like those mentioned to be made subject to the [clause's] provisions by force of general reference.' " *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 297.

[10] The rule of construction known as noscitur a socii ("it is known by its associates") canonizes the commonsense idea that, "[w]hen determining the legislature's intended meaning of a statutory word, it also is appropriate to consider the surrounding words . . . . By using this interpretive aid, the meaning of a statutory word may be indicated, controlled or made clear by the words with which it is associated in the statute." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Balloli* v. *New Haven Police Dept.*, 324 Conn. 14, 23, 151 A.3d 367 (2016).

charter empowering plaintiff's predecessor in interest
"to take real estate by condemnation for erecting and
maintaining its *poles*, *wires*, *conduits and fixtures*, out-
side of the cities and villages, public grounds and high-
ways for conducting electricity" (emphasis added));
*Connecticut Light & Power Co.* v. *Bennett*, 107 Conn.
587, 588, 141 A. 654 (1928) (adjudicating petition to
erect "lines of *towers*, *poles and wires*, *conduits and
fixtures* from its general [electricity] transmission sys-
tem near Meriden to the plant . . . near Montville"
(emphasis added)); *In re New York, New Haven & Hart-
ford Railroad Co.*, 80 Conn. 623, 626, 636, 70 A. 26 (1908)
(deciding whether municipality maintained authority to
control street railway company's placement of conduits
containing wires and other equipment for transmitting
electricity notwithstanding statute authorizing such
companies "to establish and maintain . . . along or
across and upon, above, or under the streets, highways,
and public grounds . . . suitably constructed and sup-
ported conductors, including *lines of poles and wires
and underground conduits and wires*, *and properly
supported cables*, *and including all proper fixtures
and appurtenances*, and also to transmit therewith,
thereby, or therein electricity . . . necessary for the
best conduct of its business" (emphasis added; internal
quotation marks omitted)). The same language found
its way into our statutes governing utility companies.
See, e.g., General Statutes § 16-1 (a) (22) (" '[e]lectric
distribution services' means the owning, leasing, main-
taining, operating, managing or controlling of *poles*,
*wires*, *conduits or other fixtures* along public highways
or streets for the distribution of electricity, or electric
distribution-related services").[11]

---

[11] The terminology has been used outside of Connecticut, as well. See
*Western Union Telegraph Co.* v. *Louisville & Nashville Railroad Co.*, 258
U.S. 13, 16 n.1, 42 S. Ct. 258, 66 L. Ed. 437 (1922) (Kentucky statute involving
right of "any telegraph, telephone, electric light, power, or other wire com-
pany" to install "poles, cables, wires, conduits, or other fixtures" on any
property over which railroad company enjoys easement or right of way

Wind Colebrook South, LLC *v.* Colebrook

It is clear from this historical background that the reference in § 12-41 (c) to "other fixtures of . . . electric . . . companies" does not include the plaintiff's wind turbines, which are used to generate electricity, and shares little in common with the "cables, wires, poles, underground mains, conduits, [and] pipes" listed in the statute, which refer to equipment used to transmit or to transport products such as electricity.

The plaintiff fares no better even if we were to remove the word "fixtures" from its statutory context and construe it broadly to mean any fixture treated as realty for tax purposes under Connecticut law. On the factual record as developed in the present case,[12] I agree with the majority's conclusion that the plaintiff's wind turbines are not fixtures under our case law, although I reach that result on different grounds.[13] The majority

(internal quotation marks omitted)); *Louisville* v. *Cumberland Telephone & Telegraph Co.*, 224 U.S. 649, 663, 32 S. Ct. 572, 56 L. Ed. 934 (1912) (addressing right of telephone company to install "poles, conduits, wires, and fixtures" on public streets).

[12] We review the trial court's factual findings on the elements of the fixture analysis, such as the intent of the annexer, under a clearly erroneous standard. "The question as to whether a particular piece of property is personalty or a fixture is a question of fact. *Vallerie* v. *Stonington*, 253 Conn. 371, 372–73, 751 A.2d 829 (2000); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, [193 Conn. 208, 217, 477 A.2d 988 (1984)]; see also *Pfeifle* v. *Tanabe*, 620 N.W.2d 167, 174 (N.D. 2000) (whether parties intended to treat existing fixtures as personalty and thereby constructively severed property from realty is question of fact). As such, our review . . . is limited to deciding whether the findings of the trial court were clearly erroneous." *ATC Partnership* v. *Windham*, 268 Conn. 463, 479, 845 A.2d 389 (2004). I agree with the majority, however, that the trial court's interpretation of the relevant statutes regarding the classification of property is subject to plenary review. See part I of the majority opinion.

[13] Normally, categorizing property as a fixture results in its classification as real property for tax purposes. See, e.g., *ATC Partnership* v. *Windham*, 268 Conn. 463, 472, 845 A.2d 389 (2004). The result is reversed in the present case—the wind turbine would be taxed as personal property as a fixture—only because the plaintiff argues that the wind turbines fall within the "other fixtures" provision in § 12-41 (c), which carves out an exception to the general rule.

Wind Colebrook South, LLC *v.* Colebrook

concludes that the turbine assembly is not a "fixture" within the scope of § 12-41 (c). It reasons that "the turbines cannot be found along the dividing line between personal and real property, as they have no character of personalty. The turbines, as constructed, were not once chattels that only became real property through physical annexation to the land and, thus, cannot be considered a fixture." (Footnote omitted.) Part I of the majority opinion.

I cannot agree with this reasoning because it is based on a flawed premise. Whatever class of property the wind turbine "became" once affixed to the land, it unquestionably was personalty prior to being affixed to the land. Property is either personalty or realty for taxation purposes; there is no third category. See *Capen* v. *Peckham*, 35 Conn. 88, 93 (1868) ("[p]roperty is divided into two great divisions, things personal and things real"). The wind turbine plainly was not realty before being attached to the land, and, so, assuming that it was taxable property at all, it necessarily was personalty prior to installation, precisely as were the pulleys, blocks, ropes, yokes, hooks, and other components of the slaughterhouse equipment at issue in *Capen*, the leading case relied on by the majority. See id., 88–89 (preliminary statement of facts and procedural history). In any event, the only question requiring our attention is whether the wind turbine, as constructed, is a fixture and, thus, realty, *after* being attached to the land. The majority concludes that it is not, and I agree, but not because it "ha[d] no character as personalty" at some prior time.[14] Part I of the majority opinion.

---

[14] Again, to be clear, I would not construe the statute to extend to all fixtures under the broad definition of that term because I believe that the legislature intended the word to be understood as limited by the enumerated examples, as discussed previously. The present discussion explains why the plaintiff does not prevail even under the broader definition.

Wind Colebrook South, LLC *v.* Colebrook

Generally speaking, an item of property will be considered a "fixture" only if, once physically annexed to real property, "it should clearly appear from an inspection of the property itself, taking into consideration the character of the annexation, the nature and the adaptation of the article annexed to the uses and purposes to which [the realty] was appropriated at the time the annexation was made, and the relation of the party making it to the property in question, that a *permanent* accession to the freehold *was intended* to be made by the annexation of the article." (Emphasis added.) *Capen* v. *Peckham*, supra, 35 Conn. 94; see *ATC Partnership* v. *Windham*, 268 Conn. 463, 480, 845 A.2d 389 (2004). It is also well established that "our test focuses on the objectively manifested intent of the annexer." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 216, 477 A.2d 988 (1984). Simply stated, the permanency of the annexation and the intention of the annexer are crucial factors when discerning the proper tax classification between personalty and realty.

I would hold that the wind turbine assembly at issue in the present case is not a fixture within the scope of § 12-41 (c) because it never was intended to be permanent in nature. To the contrary, the record demonstrates that the plaintiff intended to remove the wind turbines approximately twenty years after installation. The decommissioing and removal process was anticipated with sufficient certainty that the plaintiff's lender for the project required the plaintiff to reserve funds for that purpose, and the expert appraisers for both the plaintiff and the defendant testified at trial regarding the removal costs based on a useful life of twenty years.[15] My analysis is

---

[15] The trial court summarized this evidence: "Both the plaintiff's expert . . . and the defendant's expert . . . presented written appraisals and credible testimony that the turbines have an approximate useful life of at least twenty years. The plaintiff has agreed to decommission the turbines at the end of their useful life by unfastening the bolts that currently affix the turbines to the concrete foundations on 29 Flagg Hill Road and removing

Wind Colebrook South, LLC *v.* Colebrook

consistent with the conclusion reached by the Hawaii court in *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, 135 Haw. 202, 211, 347 P.3d 632 (App. 2014), cert. rejected, Hawaii Supreme Court, Docket No. SCWC-12-0000728 (February 19, 2015).[16]

the turbines altogether. Because of the anticipated cost and complexity of the decommission[ing] process, the plaintiff's lender for the project required the plaintiff to hold approximately $1 million in reserve to complete the process. The plaintiff's expert has estimated the cost of removal to be between $1,650,000 and $3,200,000.''

[16] For reasons that are not clear to me, the majority seeks to distinguish *In re Tax Appeal of Kaheawa Wind Power, LLC*. See footnote 22 of the majority opinion. The confusion may arise because the conclusion that the wind turbine was not a fixture resulted in it being classified as personal property under Hawaii law. See *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, supra, 135 Haw. 211. Under our statutory scheme, by contrast, the same conclusion results in the opposite classification; if the wind turbine assembly is not a "fixture" owned by an electric company within the meaning of § 12-41 (c), it is real property under Connecticut law pursuant to § 12-64 (a). Unlike Connecticut, Hawaii, like many other jurisdictions, treats machinery as personal property unless it is a fixture. See 84 C.J.S. Taxation § 99 (2022); Annot., "What Is Within Tax Exemption of Machinery, Tools, Apparatus, Etc., Used in Manufacturing," 172 A.L.R. 313, 313–16 (1948); see also footnote 4 of this opinion. In any event, I disagree with the majority that Hawaii's definition of a "fixture" is inconsistent with or substantially different from the meaning of that term under Connecticut law. Hawaii uses "[t]he traditional [common-law] test for determining whether an item of personal property has become a 'fixture' [which] requires three elements: (1) the actual or constructive annexation of the article to the realty, (2) the adaptation of the article to the use or purpose of that part of the realty with which it is connected, and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold." (Emphasis omitted; internal quotation marks omitted.) *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, supra, 210. The analysis in Connecticut is expressed in different terms, but the inquiries are not incompatible, as the majority suggests. Specifically, I do not agree that Connecticut omits consideration of the second prong of the analysis articulated in *In re Tax Appeal of Kaheawa Wind Power, LLC*, "the adaptation of the article to the use or purpose of that part of the realty with which it is connected . . . ." (Emphasis omitted; internal quotation marks omitted.) Id. The Connecticut analysis puts the issue in these terms: "[T]he nature and the adaptation of the article annexed to the uses and purposes to which [the realty] was appropriated at the time the annexation was made . . . ." *Capen* v. *Peckham*, supra, 35 Conn. 94; see *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, supra, 193 Conn. 219 (observing that "the trial court's finding

344 Conn. 150 AUGUST, 2022 191

Wind Colebrook South, LLC *v.* Colebrook

## II

I owe some explanation as to why I do not agree with the majority's conclusion that the wind turbine is a "building" and "structure" within the meaning of 12-64 (a). The short answer is that a specific statutory term governs over a more general one; the wind turbine is machinery, and that word provides a more accurate and particularized description than does either "building" or "structure." See, e.g., *Branford* v. *Santa Bar-*

that the tanks were not specially adapted to some special or peculiar use of the land, when viewed in light of the trial court's concomitant finding that the tanks were an 'indispensable element' to the business . . . is also consistent with the trial court's conclusion that the tanks are personalty" and not fixtures); *Toffolon* v. *Avon*, 173 Conn. 525, 535, 378 A.2d 580 (1977) (upholding finding by trial court that processing plant, which was specially adapted for prospective use, constituted fixture); *Merritt-Chapman & Scott Corp.* v. *Mauro*, 171 Conn. 177, 185, 368 A.2d 44 (1976) (concluding that, unlike prior cases in which buildings had been adapted for particular uses, "the building . . . as constructed, was not adapted to bowling alleys, but the alleys were installed in a vacant area in a shopping center already built and adapted to produce rental income from any source"); *Cleaveland* v. *Gabriel*, 149 Conn. 388, 392, 180 A.2d 749 (1962) (noting that, because "some of the equipment . . . was adapted primarily to [be] use[d] in a barn, there was some objective indication of an intention to annex the equipment to the barn"); *Lesser* v. *Bridgeport-City Trust Co.*, 124 Conn. 59, 64, 198 A. 252 (1938) (recognizing "the proposition that [when] a building is specially adapted to certain uses, the instrumentalities to carry out those purposes are ordinarily considered a part of the realty" as fixtures); *Radican* v. *Hughes*, 86 Conn. 536, 543, 86 A. 220 (1913) (concluding that small toolhouse that "was not adapted to or necessary for the use and enjoyment of the land [on] which it stood" is not fixture); *Stockwell* v. *Campbell*, 39 Conn. 362, 365 (1872) (concluding that furnaces, for which "[p]its were made in the bottom of the cellar [that were] adapted to [the furnaces] in size and depth, and for the express purpose of receiving them," were fixtures); *Fernwood Realty, LLC* v. *AeroCision, LLC*, 166 Conn. App. 345, 362–63, 141 A.3d 965 (concluding that electrical components that were specifically adapted to property were fixtures), cert. denied, 323 Conn. 912, 149 A.3d 981 (2016). In other words, the personalty affixed to the realty is more likely to be considered part of that realty if it becomes "indispensable to the [utility] of the freehold" or "peculiarly adapted to the real property"; an item that is removable and "usable at other locations is not peculiarly adapted for use on the land in [question] . . . ." (Internal quotation marks omitted.) *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, supra, 211.

Wind Colebrook South, LLC *v.* Colebrook

*bara*, 294 Conn. 803, 813, 988 A.2d 221 (2010) (it is well
settled principle of statutory construction that "specific
terms in a statute covering a given subject matter will
prevail over the more general language of the same or
another statute that otherwise might be controlling"
(internal quotation marks omitted)). This point is suffi-
cient, standing alone, to eschew the majority's construc-
tion of the statutory scheme.

The longer answer begins with the observation that
the majority conducts the tax classification analysis of
the entire wind turbine assembly by focusing solely on
the physical characteristics of the *tower* alone, which
the majority considers to be a building and/or a struc-
ture. "[A]t the very least," the majority states, "the
towers of the turbines are not 'machines' . . . ." Part
I of the majority opinion. The majority quotes *Eastern
Connecticut Cable Television, Inc.* v. *Montville*, supra,
180 Conn. 414, in support of this proposition, but that
case is inapposite because the property at issue involved
no *machinery* at all—the communications tower in
*Eastern Connecticut Cable* supported transmission
antennas, which are equipment, not machinery. See id.,
410. *Eastern Connecticut Cable* therefore does not
address or resolve the issue here, which is whether
machinery becomes something other than machinery
simply because *one of its component parts* is a tower.[17]
It is not apparent why the component parts of the wind
turbine assembly should be considered separately and
in isolation rather than as an integrated whole, that is,
why the tower is analyzed separately from the hub,
nacelle, and three blade rotor. Even if the component
parts properly are considered in isolation for these pur-
poses, some explanation is required as to why the char-

[17] The majority accurately summarizes the trial court's findings in this
regard: "The turbines, which collectively weigh 418,657 pounds, each consist
of a tower, a hub, a nacelle, and a rotor with three blades that have a 338
foot diameter."

344 Conn. 150 AUGUST, 2022 193

Wind Colebrook South, LLC *v.* Colebrook

acteristics of the *tower* should be dispositive of the tax classification of the integrated unit.

In my view, Connecticut law compels, or at least commends, a result contrary to that reached by the majority. The proper classification of the wind turbine assembly must be based on the entire integrated unit, including all of its component parts—structural and otherwise—because those parts are all physically and functionally connected and operate as a single mechanism, and no single part has any purpose or utility without the others.[18] Indeed, the statutory provisions that exempt manufacturing related "machinery"[19] from property taxation expressly define the key word as follows: " 'Machinery' means the basic machine itself, *including all of its component parts* and contrivances such as belts, pulleys, shafts, moving parts, *operating structures* and all equipment or devices used or required to control, regulate or operate the machinery, including, without limitation, computers and data processing equipment, together with all replacement and repair parts therefor, whether purchased separately or in conjunction with a complete machine, and regardless of whether the machine or component parts thereof are

[18] It cannot be that the relative size of the component parts determines the classification. Even if it were so, the tower is large (328 feet tall), but the rotor is even larger (338 feet in diameter).

[19] General Statutes § 12-81 (72) and (76) provides exemptions for machinery that is "installed in a manufacturing facility and claimed on the owner's federal income tax return as either five-year property or seven-year property . . . *and the predominant use of which is for manufacturing, processing or fabricating* . . . ." (Emphasis added.) Subdivision (72) relates to property assessments prior to October 1, 2011, whereas subdivision (76) relates to property assessments commencing thereafter. Although the plaintiffs made no claim that its wind turbines fall within this exemption, the definition of machinery contained therein is part of the same statutory scheme and bears on the meaning of the same word used in § 12-64 (a). See, e.g., *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 475–76, 28 A.3d 958 (2011) (examining related statute to construe meaning of statutory term).

assembled by the taxpayer or another party. . . .'' (Emphasis added.) General Statutes § 12-81 (72) (A) (i); accord General Statutes § 12-81 (76). The component parts of a machine are machinery for purposes of the property taxation statutes.

Logic leads to the same conclusion. The overall assembly is a machine, not because the plaintiff says so; see footnote 19 of the majority opinion; but because it was designed as a machine, it functions as a machine, and its valuation, even using the cost approach, is not limited to the component parts alone but includes ''all of the improvements necessary to develop [the] turbines.'' The tower is an integral part of the wind turbines every bit as much as wings are an integral part of an airplane or the axle is an integral part of a waterwheel; each of these components serves to locate another component of the machine in a place (the air, the water) where it can perform its function.

Even if the statutes made no mention of machinery, I would find it altogether implausible that a wind turbine is a building. It is readily understandable why sheds, icehouses, and garages would be considered buildings. Airplane hangars, even portable ones, also are buildings, as that word is commonly understood, and clearly fit within the category of enumerated buildings in § 12-64 (a) because they are used to store airplanes, much like garages store motor vehicles and silos store grain. See *Stratford* v. *Jacobelli*, 317 Conn. 863, 871, 120 A.3d 500 (2015) (holding that characteristics of airplane hangars ''place them within the purview of the proper construction of the words 'sheds' or 'all other buildings' '').

But I do not see how a wind turbine is a building, especially because the phrase ''all other buildings'' is subject to the limiting principle contained in the ejusdem generis canon, and the phrase therefore should be understood to include only those kinds of buildings

Wind Colebrook South, LLC *v.* Colebrook

that are in the same class suggested by the specifically enumerated types of buildings surrounding the general term. A wind turbine is nothing like the kinds of buildings enumerated in § 12-64 (a). It bears no similarity in appearance or function to any of the other buildings listed. Indeed, the turbine assembly is not a building in any conventional meaning of the word, and I do not believe that anyone would refer to the wind turbine as such in common and ordinary usage. See General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language"); *Barker* v. *All Roofs by Dominic*, 336 Conn. 592, 612, 248 A.3d 650 (2020) ("[w]hen a term is not defined in a statute, we begin with the assumption that the legislature intended the word to carry its ordinary meaning" (internal quotation marks omitted)). I have not found any dictionaries that define the word "building" to include anything even remotely similar to a wind turbine (or any of its component parts). Nor have I seen any description of a wind turbine or its components using the word "building" to explain the appearance or function of that equipment.

The majority's contrary conclusion rests on the fact that the base section of the 385 foot tall tower supporting the rotor has a door, which opens into a compartment that allows access for maintenance and is used to store unspecified equipment related to the operation of the wind turbine assembly.[20] See part I of the majority opinion. According to the majority, this small compart-

_____

[20] The trial court explained that the tower "consists of five sections: the top section, midsections A, B, [and] C, and a door section." The trial court described the door section as the "enclosed interior of the base . . . [which] was designed to provide enough space for more than one individual to work therein, whether to monitor the computer systems and other equipment stored therein or [to] access other interior areas of the tower to do any necessary maintenance or repairs." The trial court later observed that this base area is "used for storage of equipment related to [the] operation [of the turbine]."

Wind Colebrook South, LLC *v.* Colebrook

ment at the base of the tower makes the entire wind turbine a "building" because the compartment is large enough to be "occupied" by two or more people and to store unspecified maintenance items, presumably tools. Id. I disagree that this incidental feature of the overall assembly, wholly collateral and auxiliary to its true and essential function (a machine used to generate power), changes the fundamental character of the property. Using language in its ordinary sense, the wind turbine is a very large piece of production machinery connected to the ground by its tall tower, which is bolted into a concrete slab. The wind turbine does not become a "building" merely because the machinery's large size permits internal access or storage of certain items for maintenance and repair. In doctrinal terms, the interpretive tool of ejusdem generis instructs us to limit the meaning of the word "building" to things similar to the enumerated examples contained in the statute; none of the buildings listed in § 12-64 (a) indicates a legislative intention to include a machine like a wind turbine.[21]

Whether a wind turbine would come within the meaning of the phrase "all other . . . structures" in § 12-64 (a) is a closer call. As a purely lexical matter, a wind turbine is a structure in a literal sense. As the majority observes, a structure is " 'something ([such] as a building) that is constructed . . . .' " Part I of the majority opinion, quoting Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 1167; see also American Heritage Dictionary (2d College Ed. 1985) p. 1208 (defining "structure" as "[s]omething made up of a number of parts

---

[21] Very large machinery often contains internal space compartments that may allow for internal access for operation, repair, or maintenance. The compartment within the base of the wind turbine can be used to store tools or similar items. The same can be said of other large machines used in the construction, mining, and power production industries. Indeed, some large machines are designed to be occupied by an operator in an enclosed compartment. No one would call such a machine a building.

Wind Colebrook South, LLC *v.* Colebrook

that are held or put together in a particular way,'' ''[t]he
way in which parts are arranged or put together to form
a whole,'' and ''[s]omething constructed, [especially] a
building or part''); Black's Law Dictionary (9th Ed. 2009)
p. 1559 (defining ''structure'' as ''[a]ny construction,
production, or piece of work artificially built up or
composed of parts purposefully joined together''). If
the statute contained no reference to machinery, I might
agree with the majority that the wind turbine assembly
is a structure within the meaning of § 12-64 (a). But it
is at the very least a close call for two reasons.

First, even more than the word ''building,'' the word
''structure,'' when used as a noun, is an extremely broad,
general, and open-ended term that can refer literally to
anything that is constructed, from a toy LEGO creation
to a bronze statue to a fence to a skyscraper. Context
therefore matters in determining the meaning of the
word in any given instance, and, in the case of § 12-64
(a), one contextual clue is that the words ''other . . .
structures'' must mean something different from (or in
addition to) the word ''building'' because, otherwise,
the phrase ''all other buildings and structures'' would
contain a superfluous term.[22] See, e.g., *Scholastic Book
Clubs, Inc.* v. *Commissioner of Revenue Services*, 304
Conn. 204, 217, 38 A.3d 1183 (''[I]n construing statutes,
we presume that there is a purpose behind every sen-
tence, clause, or phrase used in an act and that no part
of a statute is superfluous. . . . Because [e]very word
and phrase [of a statute] is presumed to have meaning

---

[22] The implication is especially strong in the present case because, prior
to 1993, the statute expressly referred only to buildings, not structures. The
version of § 12-64 in effect before the 1993 amendment provided for the
taxation of real property, including ''[d]welling houses, garages, barns, sheds,
stores, shops, mills, buildings used for business, commercial, financial, man-
ufacturing, mercantile and trading purposes, ice houses, warehouses, silos,
*all other buildings* . . . .'' (Emphasis added.) General Statutes (Rev. to
1985) § 12-64. The legislature added the term ''structures'' to § 12-64 (a)
when it enacted § 1 of Public Acts 1993, No. 93-64.

Wind Colebrook South, LLC *v.* Colebrook

. . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant.'' (Internal quotation marks omitted.)), cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). Unfortunately, it is entirely unclear from the statutory text *what* meaning the words ''other . . . structures'' is intended to add. There are no specific structures (except buildings) enumerated in the statute, and, therefore, the rule of ejusdem generis, which significantly aided our effort to construe the word ''building,'' is of no assistance; we cannot derive a category of like things without any specific examples to serve as a template. The word ''structures'' cannot be intended to be subject to taxation as real property every object that has been constructed and occupies physical space, but the text of the statute fails to provide the limiting principle.[23]

Second, equally unilluminating is the legislative history of the 1993 amendment that added the word ''structure'' to the statute. See Public Acts 1993, No. 93-64, § 1 (P.A. 93-64); see also 36 H.R. Proc., Pt. 7, 1993 Sess.,

_____

[23] I agree with the majority that the rule of ejusdem generis is not available to assist our interpretation of the words ''other . . . structures,'' but not because the legislative history so clarifies the meaning that the rule is inapplicable, as the majority posits. See part I of the majority opinion. Ejusdem generis cannot be used because the canon loses all utility when, as here, there are no specific examples of structures (as opposed to buildings) enumerated in the statute to inform the meaning of the general term. I disagree in particular with the suggestion that the canon becomes inapplicable because the legislative history includes a statement that the ''purpose [of the bill] was to 'simply clarify that *all* structures and improvements not exempted are subject to the property tax' . . . .'' (Emphasis in original.) Id., quoting 36 H.R. Proc., Pt. 7, 1993 Sess., pp. 2436–37, remarks of Representative Nancy Beals. That statement begs the same question left open by the statute: what defines or characterizes other *structures*, ''all'' of which are real property? The relevant legislative history only magnifies the ambiguous meaning of the word ''structures'' because the illustrations supplied by the sponsor of the relevant legislation to illustrate the word's meaning—gazebos and swimming pools—are nothing at all like a wind turbine or a comparable item of property.

Wind Colebrook South, LLC *v.* Colebrook

pp. 2436–42. Using reason as a guide, it is sensible to assume that the legislature added the word "structures" to § 12-64 (a) to make it clear that real property includes things on (or in) the land that are building-like but that lack an essential attribute of a building proper—no roof, for example. The legislative history bears this hypothesis out. The sponsor of the bill explicitly explained that the purpose of the statute was to make it clear that physical structures such as "gazebos" and "swimming pools" were taxable as real property; 36 H.R. Proc., supra, pp. 2439–40, remarks of Representative Nancy Beals; in order to generate "a small revenue increase at the municipal level and possibly a decrease in property tax appeals . . . ." Id., p. 2437, remarks of Representative Beals.

Unfortunately, this legislative history sheds no light on the legislature's intentions with regard to things like a wind turbine, which has nothing in common with gazebos and swimming pools. Interestingly, the legislative history contains no reference whatsoever to *Eastern Connecticut Cable*, decided in 1980, which held that the word "building," as used in § 12-64 (a), did not include a 385 foot tall radio tower constructed of tubular steel and bolted into a concrete block embedded 6 feet into the earth. See *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 410, 414. The 1993 legislative history is bereft of any reference, direct or indirect, to that case. We stated in *Eastern Connecticut Cable* that the radio tower was a "structure"; id., 414; which it clearly was, but we cannot ascertain from the legislative history of P.A. 93-64 whether the legislature intended its amendment to bring structures like the radio tower at issue in *Eastern Connecticut Cable* within the scope of 12-64 (a).[24] We could resolve that

[24] Tax assessors across Connecticut are generally instructed to classify "towers" as personal property. Property Code and Description No. 22 of Connecticut's Personal Property Declaration applies to "[c]ables, conduits, pipes, poles, towers (if not currently assessed as real estate), underground mains, wires, turbines, Class I Renewables, etc., of gas, heating, or energy

Wind Colebrook South, LLC *v.* Colebrook

uncertainty by invoking the fiction of legislative omniscience to presume that the legislature had *Eastern Connecticut Cable* firmly in mind,[25] but I would have more confidence that our construction was rooted in reality if the legislative history, even obliquely, reflected some awareness of *Eastern Connecticut Cable* or some intention to include towers or other commercial assemblies, machinery, or equipment when it amended the statute to add the word "structures."

Accordingly, I respectfully concur.

—————————

producing companies, telephone companies, water and water power companies."

[25] See, e.g., *State* v. *Ashby*, 336 Conn. 452, 493, 247 A.3d 521 (2020) (observing that this court may presume that legislature was aware of its decision interpreting statute when legislature later passed statutory amendment). Numerous canons of construction assume legislative omniscience in one respect or another. See R. Posner, "Statutory Interpretation—in the Classroom and in the Courtroom," 50 U. Chi. L. Rev. 800, 811 (1983) ("Most canons of statutory construction go wrong not because they misconceive the nature of judicial interpretation or of the legislative or political process but because they impute omniscience to Congress. Omniscience is always an unrealistic assumption, and particularly so when one is dealing with the legislative process."). Here, I refer specifically to the "[the] fiction propos-[ing] that the legislature, as the agent responsible for enacting statutes, is somehow 'aware' when it enacts those statutes of all its past enactments as well as their application by courts and agencies, and that courts may proceed to apply the legislature's enactments in light of that supposed awareness." K. Petroski, "Fictions of Omniscience," 103 Ky. L.J. 477, 478 (2014–2015).